[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO MODIFY CUSTODY DATED AUGUST 30, 2002
The marriage of the parties was dissolved by court decree on November 17, 1997. Joint legal custody of the two minor children, Stephen Dyer born March 8, 1994 and Stephanie Dyer born March 6, 1996, was awarded to the parties. Physical custody of the children was awarded to the father with the mother to have reasonable and liberal rights of visitation. Said orders were made as a result of a stipulation submitted by the parties and signed by them on November 13, 1997, with said stipulation approved by the court.
Since the date of the judgment, the parties have embarked on a continuous course of conduct resulting in various motions for contempt, motions to modify custody and references to family relations. On May 4, 1998, the parties stipulated and the court ordered reasonable visitation to the defendant to include every weekday from 4:00 p.m. to 7:30 a.m. and alternating weekends from Friday at 4:00 p.m. until Monday at 7:45 a.m. The court further ordered the arrangement of payment and babysitting/daycare services. Father was ordered to be responsible for providing breakfast for the children.
On November 9, 1998, the parties again submitted an agreement which was approved by the court resulting in an order specifying that the father was responsible for the children from 7:00 a.m. until 4:00 p.m. on Monday through Friday. Certain other orders were made concerning the obligation for daycare expenses. The court further barred the defendant's boyfriend from picking up the minor children.
Access with the minor children continued to be a problem between the parties. The plaintiff filed a motion to modify access resulting in a further stipulation of the parties. The court ordered the visitation to continue on alternate weekends. The defendant would drop off the minor children to the father at 7:30 a.m. at the father's residence. Pickup of the children was ordered to occur at 4:00 p.m. at the father's shop. The CT Page 2643 defendant's boyfriend, Mr. Howard, was permitted to pick up the minor children in an emergency situation.
The parties lived under this difficult arrangement from approximately the date of the divorce until the plaintiff's move to Jewett City in October 2001. Prior to the plaintiff's move, the parties lived in close proximity to each other in the Stonington area. The mother moved from Pawcatuck to Westerly to the Stonington Borough where she resided for a period of time with her former boyfriend, Mr. Arthur Howard. The mother had access with the children after work during the weekdays and every other weekend. The father would have the children during the daytime weekdays in light of the fact he was working the second shift. He had the children on the alternate weekends. This arrangement required constant intervention by the court as evidenced by the numerous motions filed by the parties.
In early fall 2001, the plaintiff made a decision to relocate from Pawcatuck to Jewett City, Connecticut. His decision and arrangements were made without discussion with the defendant. The plaintiff sold his home in Pawcatuck and moved to Griswold to reside with his parents and his girlfriend while waiting for closing on a new home he purchased in Griswold. After learning from the children that the father was moving to Jewett City with the minor children, the defendant filed a motion to obtain custody of the children. The defendant wanted to continue to raise the children in the Stonington community and school system.
The court approved the agreement of the parties on October 27, 2001 ordering temporary physical custody of the children in favor of the defendant mother during the school year without prejudice to any future findings of the court. The court further ordered the visitation with the children during the summer in favor of the plaintiff. The court appointed Attorney Nancy Wildes as counsel for the minor children. The court further ordered the plaintiff father to have alternate weekend visitation. In contemplation of the defendant moving from Westerly to Pawcatuck, the court ordered her to pay any tuition necessary in the Pawcatuck school district required until her residence was legally transferred. The court referred the matter to Family Relations for a custody evaluation and continued the matter to a subsequent date.[1]
The result of the referral on October 29, 2001, the issue of custody was further evaluated and a report submitted on December 17, 2001. (See Def. Ex. A.) Said report referenced an agreement of the parties regarding custodial arrangement and scheduled access as well as a holiday schedule. The parties in effect agreed that the temporary orders of the court regarding custody and scheduled access should remain in effect. CT Page 2644
The major issue at the time of the plaintiff's move to the Griswold area was the education of the minor children. Father made a unilateral decision to move away from the Pawcatuck area and enroll the children in the Griswold school system. According to the testimony of both of the parties at trial, this decision was contra to the prior intentions of the plaintiff and the defendant. The plaintiff and the defendant had operated under the strained access schedule with the intention of keeping the children enrolled in the Stonington school system. Mother sought and obtained temporary custody with the understanding that she would secure housing in Stonington which would allow the children to remain in the same school system and community. The plaintiff agreed to permit the children to temporarily reside with the mother to keep the children enrolled in school and raised in familiar surroundings.
From October 2001 through the summer of 2002, the plaintiff ended a relationship with the first boyfriend and commenced a relationship with a new boyfriend. After learning her apartment building in Stonington was to be sold, the defendant decided to move to Jewett City. She presently resides in an apartment in Jewett City with her boyfriend. The defendant claimed at trial a move to Jewett City was a reasonable move under the circumstances then existing.
The plaintiff, as a result of the mother's move out of the Stonington area, filed the present motion to reopen and modify the judgment seeking custody of the two minor children. The court again referred the matter to Family Relations on October 2002 for an evaluation. On that date, the court also approved another agreement of the parties ordering the plaintiff to have access on alternating weekends from Friday after school until Monday mornings before school. The party sending the children to school was further ordered to supply lunch. The court further accepted the agreement of the parties for counseling of the children. Both parents were further ordered not to interfere with the counseling process.
The Family Relations' report was completed on January 14, 2003. The court held a hearing on the plaintiff's motion to reopen judgment in addition to the counsel for the minor child's motion for contempt and motion for payment of counsel fees on February 6, 2003 and February 11, 2003.
The court heard testimony from the Family Relations Officer, Norma Damato. Her evaluation with recommendations was submitted to the court as Plaintiff's Exhibit 1. Ms. Damato noted, as stated in said report, that these parties have been involved with the Department of Children and Families as a result of six referrals between November 17, 1996 and CT Page 2645 August 17, 2001. Both parties made referrals against the other. Most of the referrals are resulted in close the close out files based on unsubstantiated abuse or neglect. Two referrals, however, have resulted in findings of emotional neglect caused by the mother and paternal grandparents (December 28, 1998) and substantiated emotional neglect due to the exposure to the ongoing custody and visitation battle.
The September 18, 2001 closure of the sixth referral resulted from unsubstantiated complaints. It states, in part, "it became very clear that father and mother have an extremely strained relationship and do not communicate directly with one another. The children do not report any abuse or neglect in either home, but each parent is sure that the children are not being properly cared for in the other's home. The children are supposed to start counseling in the near future which will help them to process what is going on." (Plaintiff's Exhibit 1, pg. 3.)
As to issues of assault and domestic abuse, both parties were arrested for domestic violence. The plaintiff was arrested on November 17, 1996 for criminal mischief third. He has successfully completed the family violence education program and the case was dismissed on September 19, 1997. The mother was arrested on November 30, 1997 for disorderly conduct and criminal mischief. The case was nolled on January 12, 1998.
In addition to the testimony of the Family Relations Officer, and submission of her report as a full exhibit, the court heard from the plaintiff, the defendant, the therapist for the minor children and a neighbor of the defendant who picks the children up at the bus stop at the end of the school day.
In order for the plaintiff to prevail on his motion to reopen the judgment to modify custody, he must allege and prove material or substantial change in circumstances resulting in a change of custody which is in the best interest of the minor children. Brubeck v.Burns-Brubeck, 42 Conn. App. 583 (1996).
The plaintiff initially requested that the court reopen and modify the judgment and transfer custody of the two minor children to him. During the pendency of the motion, he has withdrawn his claim as to custody of the minor child Stephen. The plaintiff requests only the custody of the minor child Stephanie be transferred resulting in physical custody with him in his home in Griswold with the mother to have specific rights of visitation. The defendant objects to any custody which will result in the splitting of the two minor children which she feels would be harmful to both of them and clearly not in their best interest. The court is left with a delicate task of determining what would be in the best interest of CT Page 2646 the minor child Stephanie taking into consideration her potential separation from her brother.
The Family Relations Officer, as set out in her report, recommends that primary physical custody of the minor child Stephanie be transferred to the plaintiff father. The counselor for the minor child, Jennifer Springs, strongly recommends that counseling for both Stephanie and Stephen continue on a regular basis. Advocate for the minor child, Nancy Wildes, advised the court that Stephanie clearly wanted to reside with her father as the primary residential parent.
The court finds that a material and/or substantial change in circumstances have been proven by the plaintiff father since the date of the last custody order. The defendant mother unilaterally determined to remove the minor children from the Stonington school system and community and move them to Jewett City. The court further finds that the defendant, through her inaction, prohibited the minor children from continuing in counseling as previously agreed to and ordered by the court. The court does not find the defendant's testimony credible as to the reasons for the denial of counseling for the children. The plaintiff was ready, willing and able to continue counseling. He was present at the counseling sessions previously scheduled with notice to him. The court concluded that defendant's actions, and/or inactions, reflect her lack of concern for appropriate counseling for the minor children. The children clearly need continued and regular counseling to deal with the continuous emotional upheaval caused by the plaintiff and the defendant.
The court further finds that the plaintiff has proven to the court that his living arrangements best suit residential custody for Stephanie. He has remarried and purchased a new home in Griswold where he resides with his wife. Her children spend weekends but do not permanently reside with the plaintiff and his spouse. The defendant presently resides in Jewett City with Mr. Scott Tripp. She cohabited with Mr. Tripp after a short dating period while he was under a temporary restraining order involving a former wife and/or girlfriend.
The court concludes that the physical custody of Stephanie should be transferred to her father. The court is convinced that the father will follow the court order and continue the much needed therapy for both Stephanie and Stephen on a regular basis. The court finds, contrary to the testimony of the defendant, that Stephanie enjoys a reasonable relationship with her step-mother. Stephanie does not enjoy a good relationship with Mr. Tripp. She is uncomfortable with the living arrangements when Mr. Tripp has his children visiting at the apartment in Jewett City. CT Page 2647
The court has heard insufficient evidence to conclude any harm shall come to Stephen as a result of the transfer of physical possession of Stephanie from the defendant to the plaintiff. The court heard Stephanie's position through the testimony, the Family Relations Officer, the plaintiff and the defendant. The court can only speculate on how split custody arrangements will affect Stephen. It is clear to the court, however, that it is in the best interest of Stephanie to live with her father as a primary custodial basis. Counseling will be ordered for both children with the plaintiff having the responsibility to transport the children to the therapist.
The court accepts the conclusions and recommendations of the Family Relations Officer and incorporates her recommendations as orders of the court with additional orders as stated below. It is hereby ordered that:
1. The plaintiff and defendant shall continue to share joint legal custody of the two minor children, Stephanie born March 6, 1996 and Stephen born March 8, 1994. Primary residential custody of Stephanie shall be with the plaintiff father. Primary residential custody of Stephen shall be with the defendant mother. The minor child, Stephen, and minor child, Stephanie, will continue in counseling on Wednesday afternoon. The plaintiff shall bring both children to counseling and return Stephen to his mother's residence by 8:00 p.m. Wednesday evening.
2. Both children will be with each other on an alternating access schedule. Both children to be with the plaintiff father or defendant mother on weekends consisting of Friday after school until Monday morning before school. The parent who has the children on Monday morning will be responsible to provide breakfast and lunch and bus transportation or transportation directly to school.
3. The plaintiff and defendant are hereby ordered to have two weeks vacation not necessarily consecutive with both children during the summer school vacation. Each parent will notify the other of his/her choice of said week or weeks no later than May 1st of each year. If a conflict arises, mother will have first choice in odd years and father will have first choice in even years. The children will be permitted and encouraged to contact the other parent by telephone during said visitation.
 4. Holidays shall be divided as follows
a. Easter will be shared. The parent who is not exercising their alternating weekend on Easter Sunday will pick up the children at 12:00 CT Page 2648 noon.
b. Thanksgiving will alternate. Even numbered years will be with mother, odd numbered years with the father. The time of exchange will be 8:00 a.m. through the next day when the normal schedule will resume.
c. Christmas will alternate. Even numbered years will be with the father, odd numbered years with the mother. The time of exchange will be 8:00 a.m. on December 24th through 2:00 p.m. on December 25th.
d. Mother's Day will be with the mother. Father will return the children to mother at 9:00 a.m. if it falls on his weekend. Father's Day will be with the father. Father will spend time with the children from 9:00 a.m. Monday morning if it falls on mother's weekend.
The holiday schedule will supersede the regular schedule of access.
5. Any transfers that are required because school buses are not available will occur at Dandy Donuts in Griswold near I-395.
6. Both minor children are ordered to continue counseling with Shoreline Counseling every Wednesday until further ordered by the court. The plaintiff will be responsible to set the times of the appointments and bring both Stephanie and Stephen to said counseling sessions. Stephen will eat dinner with the plaintiff and Stephanie and the plaintiff will return Stephen at 8:00 p.m. to the mother's residence.
7. The defendant shall pay Shoreline Clinic $155 for canceled or no show visits with two weeks as the date of the filing of this order.
Devine, J.